UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY M. HERRERA, | No. 2:24-cv-1660 CSK P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| JEFF LYNCH, et al., | |
| Defendants. | |

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's motion for a preliminary injunction and temporary restraining order filed June 17, 2024. (ECF No. 4.) For the reasons stated herein, this Court recommends that plaintiff's motion be denied.

I.  Legal Standards

Federal Rule of Civil Procedure 65 governs injunctions and restraining orders, and requires that a motion for temporary restraining order include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate, and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

///

1

Temporary restraining orders are generally governed by the same standard applicable to preliminary injunctions, except that preliminary injunctions require notice to the adverse party. See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc., 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001); Fed. R. Civ. P. 65(a). Eastern District of California Local Rule 231, however, requires notice for temporary restraining orders as well, "[e]xcept in the most extraordinary of circumstances," and the court considers whether the applicant could have sought relief by motion for preliminary injunction at an earlier date. E.D. Cal. Local Rule 231(a)-(b). A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70, 415 U.S. 423, 439 (1974).

A temporary restraining order is "an extraordinary remedy" and may be issued only if plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his/her favor; and (4) that an injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Plaintiff bears the burden of clearly satisfying all four prongs. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011). A temporary restraining order will not issue if plaintiff merely shows irreparable harm is possible – a showing of likelihood is required. Id. at 1131.

The injunctive relief an applicant requests must relate to the claims brought in the complaint. See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr., 810 F.3d 631, 633 (9th Cir. 2015) ("When a Plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction."). Absent a nexus between the injury claimed in the motion and the underlying complaint, the court lacks the authority to grant plaintiff any relief. Id. at 636; see also Beaton v. Miller, 2020 WL 5847014, at *1 (E.D. Cal. Oct. 1, 2020) (the court's jurisdiction is "limited to the parties in this action" and the pendency of an action "does not give the Court jurisdiction over prison officials in general or over the conditions of an inmate's confinement unrelated to the claims before it.").

The Prison Litigation Reform Act ("PLRA") imposes additional requirements on prisoner litigants seeking preliminary injunctive relief against prison officials. In such cases, "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); Villery v. California Dep't of Corr., 2016 WL 70326, at *3 (E.D. Cal. Jan. 6, 2016). As the Ninth Circuit has observed, the PLRA places significant limits upon a court's power to grant preliminary injunctive relief to inmates, and "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." Gilmore v. People of the State of California, 220 F.3d 987, 998-99 (9th Cir. 2000).

II.     Background

Plaintiff filed his complaint on June 10, 2024. (ECF No. 1.) On June 14, 2024, this Court granted plaintiff thirty days to file an in forma pauperis affidavit or pay the filing fee. (ECF No. 3.) The Court has not screened plaintiff's complaint because it is awaiting plaintiff's response to the June 14, 2024 Order.

Named as defendants in the complaint are California State Prison-Sacramento ("CSP-Sac") Sergeant Akins, CSP-Sac Correctional Officers Mayfield and Rowberg, CSP-Sac Warden Lynch and CSP-Sac Captain Gomez. (ECF No. 1 at 3-4, 8.) Plaintiff alleges that on October 4, 2023, plaintiff was called out of his cell and told that the Sergeant wanted to speak with him. (Id. at 5.) When plaintiff got to the office, defendant Akins had handcuffs out. (Id.) Defendant Akins told plaintiff that he was taking plaintiff's cell and that plaintiff had to cuff up because he was sending plaintiff to administrative segregation ("ad seg"). (Id.) Plaintiff asked if this was due to plaintiff's numerous complaints on officials at CSP-Sac. (Id.) Defendant Akins placed handcuffs on plaintiff and put plaintiff in the B-Facility holding cage at around 7:30 a.m. (Id.) Plaintiff kept calling out to correctional officers and defendant Akins that he needed to use the restroom. (Id.) Plaintiff's back and legs hurt because he had to stand up the whole time. (Id.) Right before dinner, plaintiff saw defendants Mayfield and Rowberg. (Id.) Plaintiff told

defendant Mayfield that he was in a lot of pain  (Id)  Plaintiff stated that he had been in the cage for over 12 hours without water or his mental health medication.  (Id. at 6.)  Defendant Mayfield laughed.  (Id.)  Plaintiff alleges that defendant Captain Gomez had full knowledge of the violations and was "acting as the person controlling these incidents I was placed in."  (Id. at 8.)  Plaintiff alleges that defendants violated the Eighth Amendment by making plaintiff stand in the holding cell for over 12 hours.  (Id. at 6-8.)

III.     Claims in Pending Motion for Injunctive Relief

In the pending motion, plaintiff requests an emergency transfer out of CSP-Sac.  (ECF No. 4 at 1.)  Plaintiff alleges that if he stays at CSP-Sac, he believes he will be killed and that his life is in real danger.  (Id.)  Plaintiff wants his administrative grievances investigated and CSP-Sac officials to stop writing plaintiff up for false rules violation reports.  (Id.)  Plaintiff requests that the Court order prison officials to stop harassing plaintiff.  (Id.)  Plaintiff alleges that he wants to be protected from "these people" trying to set plaintiff up by paying other inmates to cause plaintiff harm.  (Id. at 2.)  Plaintiff requests that he "[b]e granted my package" that was at the prison on April 10, 2024 or have his family compensated.  (Id. at 3.)  Plaintiff requests that he be granted single cell status.  (Id. at 13.)

In support of his request for injunctive relief, plaintiff references the allegations in the complaint.  (Id. at 4, 6.)  Plaintiff also alleges that in 2022, prison officials first attempted to set plaintiff up.  (Id. at 7.)  Plaintiff claims that in 2022, defendant Captain Gomez denied the mental health team's request for plaintiff to receive single cell status so that his officers could set plaintiff up for violence.  (Id.)  Plaintiff alleges that in 2022 and 2023 he wrote many staff complaints that went unanswered.  (Id. at 8.)  Plaintiff alleges that he has been hit over the head more than 20 times with a baton by more than three different officers.  (Id.)  Plaintiff alleges that these incidents have not been investigated.  (Id.)  Plaintiff alleges that he was beat until the point that he was deaf in one ear.  (Id. at 9.)  Plaintiff alleges that prison officials at Kern Valley State Prison ("KVSP") targeted plaintiff as soon as plaintiff got off the bus at CSP-Sac.  (Id.)  Plaintiff alleges that he witnessed prison officials at CSP-Sac attack and beat other inmates.  (Id.)  Plaintiff alleges that just recently he saw close to ten correctional officers murder a person.  (Id. at 9-10.)

Plaintiff alleges that back in November 2023, he filed a staff misconduct complaint requesting that the B yard staff be investigated for putting people's lives in danger. (Id. at 10.) Plaintiff alleges that because "we are consider EOP/patients, custody try to do anything they want or feel because they feel like they can get away with it."[1] (Id.) Plaintiff alleges that Lieutenant Rossenberg sent Correctional Officer Archie to harass plaintiff. (Id. at 11.) They took plaintiff's tablet and now plaintiff cannot communicate with his family. (Id.) Plaintiff alleges that on February 15, 2021, three correctional officers attempted to murder plaintiff by beating him over the head 20 times. (Id. at 14.) Plaintiff alleges that he will keep refusing cellmates in order to protect himself. (Id.)

Plaintiff attaches several grievances as exhibits to the pending motion. In the first grievance (No. 472333), signed by plaintiff on October 31, 2023, plaintiff alleged harassment by Officer Herrera in October 2023. (Id. at 19-20.) In the second grievance (No. 576664), signed by plaintiff on February 6, 2024, plaintiff alleged that defendant Warden Lynch allows his employees to commit misconduct. (Id. at 21-22.) In the third grievance (No. 469540), signed by plaintiff on October 24, 2023, plaintiff alleged that prison officials refused to transfer plaintiff closer to his family. (Id. at 23-24.) Plaintiff attaches documents from an appeal of the third grievance (No. 469540), in which he complained about missing property. (Id. at 25-28.) In the fourth grievance (No. 467344), signed by plaintiff on October 19, 2023, plaintiff alleged that he feared for his life and was being set up. (Id. at 30-31.) In the fourth grievance, plaintiff also appeared to raise the claims raised in the instant action. (Id.)

Plaintiff also attaches documents from a rules violation report charging plaintiff with battery on a peace officer at KVSP on February 15, 2021. (Id. at 32-64.)

///

---

[1] "EOP" refers to Enhanced Outpatient Program. Inmates who receive enhanced outpatient program care are designated "EOP" by California Department of Corrections and Rehabilitation ("CDCR") Mental Health Services because they are receiving mental health care services. Martinez v. Tilton, 2015 WL 1198739, at *7 (E.D. Cal. March 16, 2015). "EOP is characterized by a separate housing unit and structured activities for mentally ill inmate-patients who, because of their illness, experience adjustment difficulties in a General Population ("GP") setting, yet are not so impaired as to require 24-hour patient care." (Id.)

IV.     Discussion

Plaintiff makes serious allegations in the pending motion. However, for the following reasons, this Court finds that plaintiff does not meet the standard for injunctive relief.

The only specific claims in the pending motion against defendants are based on the allegations in the complaint and that in 2022, defendant Captain Gomez denied the mental health team's request for plaintiff to receive single cell status so that officers could set plaintiff up. "[W]here immediate injunctive relief is sought based on claims that governmental actors or agencies have violated the law in the past, ... Plaintiff must establish that the threat of future or repeated injury is both 'real and immediate,' not just 'conjectural' or 'hypothetical.'" Davis v. Paramo, 2016 WL 5724908, at *5 (S.D Cal. July 18, 2016) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)). To be entitled to injunctive relief, plaintiff must do more than cite defendants' past actions. Rabb v. Figueroa, 2024 WL 1508823, at *3 (E.D. Cal. Apr. 8, 2024) (citing Bradford v. Jordan, 2018 WL 11328113 at *3 (C.D. Cal. Nov. 19, 2018)). This Court finds that plaintiff fails to demonstrate a threat of real and immediate harm from defendants based on the claim in the complaint that defendants placed plaintiff in a holding cell for over 12 hours in October 2023. This Court also finds that plaintiff's claim that defendant Captain Gomez denied plaintiff single cell status in 2022 fails to demonstrate a threat of real and immediate harm by defendants related to the claims raised in the complaint.

Plaintiff's grievance signed February 6, 2024 alleging that defendant Warden Lynch allowed his employees to commit misconduct does not allege specific instances of misconduct committed by defendants. While this grievance alleges that defendant Lynch supported misconduct committed by every captain from defendant Gomez "and before him" (ECF No. 4 at 21), plaintiff alleges no specific instances of misconduct by defendant Gomez in this grievance. This Court finds that the vague and conclusory allegations against defendants Warden Lynch and Captain Gomez in this grievance do not demonstrate a threat of real and immediate harm by defendants related to the claims raised in the complaint.

The remaining claims in the pending motion are not based on the claims raised in the complaint. As discussed above, the Court cannot grant injunctive relief regarding claims not

raised in the complaint. Pac. Radiation Oncology, LLC., 810 F.3d at 633. Plaintiff's claims of misconduct that are not based on the claims raised in the complaint should be pursued in a separate action.

For the reasons discussed above, plaintiff's motion for injunctive relief should be denied. However, due to the serious nature of the claims raised in the pending motion, and in an abundance of caution, this Court directs the Clerk of the Court to serve these findings and recommendations and plaintiff's motion for injunctive relief on Supervising Deputy Attorney General Monica Anderson.

V.    Conclusion

Accordingly, IT IS HEREBY ORDERED that:

1. The Clerk of the Court shall assign a district judge to this action;
2. The Clerk of the Court shall serve these findings and recommendations and plaintiff's motion for injunctive relief (ECF No. 4) on Supervising Deputy Attorney General Monica Anderson; and

IT IS HEREBY RECOMMENDED that plaintiff's motion for injunctive relief (ECF No. 4) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 21, 2024

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Herr1660.tro2